**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-6109

RAYMOND TATE,

Plaintiff - Appellant,

v.

D. J. HARMON, Regional Director; M. BRECKON, Warden; ROGER MULLINS, Unit Manager; RODNEY COLLINS, Case Manager; DINK WILLIS, Counselor; B. JOHNSON, Senior Officer; J. WOODWARD, Cook Foreman; JOHN DOE, Correctional Officer; M. HAMILTON, Lieutenant; S. W. WHITE, Property Officer; S. HUTCHINS, Correctional Officer; J. ROBBINS, Correctional Officer; UNITED STATES OF AMERICA,

Defendants - Appellees.

-------------------------------------------------

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER; RIGHTS BEHIND BARS,

Amici Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia at Roanoke. Norman K. Moon, Senior District Judge. (7:19-cv-00609-NKM-JCH)

Argued: October 25, 2022                    Decided: December 13, 2022

Before NIEMEYER, HARRIS, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Harris and Judge Heytens joined.

———————————————

**ARGUED:** Daniel Scott Harawa, WASHINGTON UNIVERSITY SCHOOL OF LAW, Saint Louis, Missouri, for Appellant. Krista Consiglio Frith, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees. **ON BRIEF:** Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees. David Shapiro, Roderick and Solange MacArthur Justice Center, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois; Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Amici Curiae.

———————————————

NIEMEYER, Circuit Judge:

The issue before us is whether an inmate has a cause of action under the Eighth Amendment for money damages against federal prison officials based on "degenerate" conditions of confinement. Despite the absence of any statutory authority for such a claim, the inmate contends that he has a cause of action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and its progeny. And if his claim is not authorized by the existing *Bivens* cases, he requests that we extend *Bivens* to cover his claim, which, he argues, would only be a "modest" extension of *Bivens*.

We conclude that the inmate's claim is, under the applicable standard, different from any Supreme Court decision finding a *Bivens* cause of action and that the relief he seeks in this new context should be provided by Congress, if at all. Our conclusion is based on the broad nature of the inmate's claim and the separation-of-powers implications of recognizing a *Bivens* cause of action in the new context of his claim. Accordingly, we affirm the district court's order dismissing his claim.

I

Raymond Tate, an inmate at U.S. Penitentiary Lee in western Virginia, commenced this action *pro se* against officials and employees of the Federal Bureau of Prisons, seeking money damages and other relief against the defendants, based on the manner in which he was treated in prison and the conditions of his confinement. His highly-detailed 25-page complaint, plus 29 exhibits, catalogs a broad range of engagements with prison officials,

3

grievance proceedings, disciplinary actions, and conditions of confinement, all to support his claims that his First, Fifth, and Eighth Amendment rights were violated.

More particularly, Tate alleged that he was sent to the prison's Special Housing Unit as punishment after a correctional officer filed a retaliatory incident report that falsely claimed that Tate had made threatening and sexually aggressive comments to the officer while also behaving uncooperatively during a headcount. He alleged that the conditions in the Special Housing Unit to which he was sent were so degrading and detrimental that they constituted cruel and unusual punishment, in violation of the Eighth Amendment. He alleged that his cell was filthy and covered with mold; that the temperatures in his cell could be extraordinarily cold; that he was given soiled and inadequate bedding; that he was provided undersized toilet paper and a virtually unusable toothbrush; that he was not provided adequate cleaning supplies; that prison guards made it difficult or impossible for him to use the one hour per day that he was supposed to be allowed outside his cell; and that prison guards intentionally endangered him by falsely telling other inmates that he had exposed himself and made sexual overtures to male prison guards. And for authorization of his claim for money damages, he relied on *Bivens*.

The defendants filed a motion to dismiss, arguing, as relevant here, that Tate's claims were not cognizable under *Bivens*.

The district court granted the defendants' motion and dismissed Tate's action. The court concluded that Tate's claims under the First, Fifth, and Eighth Amendments "ar[o]se in a context different than the claims previously recognized by [the Supreme Court in its *Bivens* cases]." The court also declined "to recognize a new remedy in any of the new

4

contexts in which Tate's claims ar[o]se, including his First Amendment and Fifth Amendment claims, as well as any conditions-of-confinement claim under the Eighth Amendment." Tate filed a motion for reconsideration, which the court also denied. From the district court's order dated December 7, 2020, Tate filed this appeal.

Thereafter, we appointed counsel* to represent Tate on appeal and address whether "a *Bivens* remedy presently exists for Eighth Amendment claims alleging unlawful conditions of confinement." With counsel, Tate now contends that he is entitled to bring a *Bivens* action under the Eighth Amendment based on *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994), or, if his claims differ from *Carlson* and *Farmer*, that we should extend *Bivens* to cover his claim.

II

Tate argues that he is entitled to a *Bivens* remedy to remedy wrongs for violating his Eighth Amendment rights when "Federal prison officials exposed him to conditions that posed a constitutionally unacceptable risk to his health and safety and took deliberate actions that exposed him to a substantial risk of serious physical harm." He maintains that his conditions-of-confinement claim "fits well within the class of *Bivens* actions acknowledged by the Supreme Court" in *Carlson* and *Farmer*. Alternatively, he argues that if his claim is found to arise in a new *Bivens* context, we should conclude that "no special factors counsel against recognizing what would be at most a modest extension of

---

* Daniel Scott Harawa, Esq., has well represented Tate on appeal, and we are grateful for his important service both to Tate and to the court.

extant *Bivens* actions." Two issues are thus presented — (1) whether Tate's conditions-of-confinement claim falls within the context of *Bivens* and its progeny and, if not, (2) whether the district court erred in refusing to extend *Bivens* to provide a damages remedy for his claim.

A

Before *Bivens*, plaintiffs had the statutory authority under 42 U.S.C. § 1983 to sue *state* officials for money damages when the officials violated plaintiffs' constitutional rights under color of state law. But no statutory counterpart existed for plaintiffs to sue *federal* officials for money damages for violating their constitutional rights.

In *Bivens*, the Supreme Court held for the first time that even though Congress had not provided any statutory authority for such actions, the plaintiff had an *implied* cause of action under the Fourth Amendment that entitled him to sue federal officials for money damages arising from an unreasonable search and seizure. Even though the Fourth Amendment provided no such remedy explicitly, the Court found that a remedy was implied under general principals of federal jurisdiction to redress wrongs that otherwise would have been left unredressed. *Bivens*, 403 U.S. at 396–97.

After *Bivens*, the Court found two more implied causes of action for money damages under the Fifth and Eighth Amendments. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court allowed a claim for money damages made by a former congressional administrative assistant who alleged that her employer, a member of Congress, had terminated her employment because of her sex, in violation of the equal protection component of the Fifth

6

Amendment's Due Process Clause. And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court allowed a claim under the Eighth Amendment for money damages by an inmate's estate against prison officials who allegedly acted with deliberate indifference in failing to treat the inmate's asthma, leading to his death.

But in the 42 years following *Carlson*, which was decided in 1980, the Court has "consistently rebuffed" every request — 12 of them now — to find implied causes of action against federal officials for money damages under the Constitution. *Hernandez v. Mesa*, 140 S. Ct. at 735, 743 (2020); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022). And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them. *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017) (noting that "expanding the *Bivens* remedy is now a disfavored judicial activity" (cleaned up)); *Hernandez*, 140 S. Ct. at 742–43 (noting that if its "three "*Bivens* cases had been decided today, it is doubtful that we would have reached the same result" (cleaned up)); *Egbert*, 142 S. Ct. at 1802 (noting, "Now long past the heady days in which this Court assumed common-law powers to create causes of action [as in *Bivens*], we have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power" (cleaned up)). And the Court's recent admonitions are clear: "[T]he Judiciary's authority to [create causes of action under the Constitution] is, at best, uncertain," *Egbert*, 142 S. Ct. at 1803; courts must beware of "arrogating legislative power," *Hernandez*, 140 S. Ct. at 741; and "our watchword is caution," *id.* at 742; *Egbert*, 142 S. Ct. at 1803.

In its trilogy, the Court explained the reasons for the "notable change in [its] approach" to *Bivens* actions. *Ziglar*, 137 S. Ct. at 1857. It stated that *Bivens* was decided in an era when the Court was more generally willing to find implied causes of action, *id.* at 1855, and that the Court has since then come "to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial powers," *Hernandez*, 140 S. Ct. at 741; *see also Egbert*, 142 S. Ct. at 1802. It observed that because "creating a cause of action is a legislative endeavor," "the Judiciary's authority to do so *at all* is, at best, uncertain." *Egbert*, 142 S. Ct. at 1802–03 (emphasis added). It explained:

> [I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation.

*Ziglar*, 137 S. Ct. at 1856.

Nonetheless, the Court elected not to overrule its three *Bivens* cases, although some members expressed the view that "the time has come to consider discarding the *Bivens* doctrine altogether." *Hernandez*, 140 S. Ct. at 750 (Thomas, J., concurring, joined by Gorsuch, J.). The Court did, however, impose a highly restrictive analysis for *Bivens* cases by (1) narrowing the precedential scope of *Bivens*, *Davis*, and *Carlson* and (2) imposing a broad standard of criteria that, if satisfied, require courts to reject any expansion of *Bivens* remedies.

To this end, the Court prescribed "a two-step inquiry." *Hernandez*, 140 S. Ct. at 743. First, a court must determine whether a claim falls within the causes of action authorized under the Supreme Court's three *Bivens* cases or whether it "arises in a 'new

8

context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Court explained that its "understanding of a 'new context' is broad," thus requiring the scope of the existing *Bivens* causes of action to be construed narrowly. *Id*. A context is new, the Court explained, when it is "different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Ziglar*, 137 S. Ct. at 1859.

If, following the first step, the court finds that a claim arises in a "new context" and thus is different from the three *Bivens* cases, it must proceed to the "second step and ask whether there are any special factors that counsel hesitation about granting the extension" of *Bivens*. *Hernandez*, 140 S. Ct. at 743 (cleaned up). And if there is "reason to pause before applying *Bivens* in a new context or to a new class of defendants," the request to extend *Bivens* should be rejected. *Id*. Moreover, the Court has directed that the "special factors" inquiry must center on "separation-of-powers principles." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857). As the Court explained:

> We thus consider the risk of interfering with the authority of other branches, and we ask whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

*Id*. (citation omitted); *see also Ziglar*, 137 S. Ct. at 1858.

Against this now critical condition of *Bivens* jurisprudence and the caution that the Court has mandated when applying it, courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*. And we have so proceeded. *See, e.g., Annappareddy v. Pascale*, 996 F.3d 120

9

(4th Cir. 2021) (rejecting a requested extension of *Bivens* to claims of wrongdoing by prosecutors and criminal investigators, allegedly in violation of the Fourth and Fifth Amendments); *Earle v. Shreves*, 990 F.3d 774 (4th Cir. 2021) (rejecting a requested extension of *Bivens* to claims of wrongful retaliation by prison officials for filing grievances, allegedly in violation of the First Amendment); *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019) (rejecting a requested extension of *Bivens* to claims of wrongful searches and seizures by Immigration and Customs Enforcement agents, allegedly in violation of the Fourth and Fifth Amendments).  In short, courts' authority now to create new causes of action for money damages under the Constitution is most limited, for "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III."  *Ziglar*, 137 S. Ct. at 1858.  And even "uncertainty alone" in this regard "forecloses relief."  *Egbert*, 142 S. Ct. at 1804.

We now address whether Tate's claim arises in a "new context" and, if so, whether special factors counsel hesitation about extending the *Bivens* remedy to that context.

B

On the first step, Tate argues that his Eighth Amendment conditions-of-confinement claim for money damages against prison officials is authorized by the Supreme Court's

decisions in *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994), and that the district court erred as a matter of law in concluding otherwise.

The district court concluded that while *Carlson* "involved a prison official's deliberate indifference to an inmate's health in failing to provide medical care, where that failure allegedly resulted in the inmate's death[,] . . . Tate's claim is premised on conditions in the [Special Housing Unit]. . . . His conditions-of-confinement claim thus arises in a new context." And with respect to *Farmer*, the district court held that the Supreme Court did not address whether it was recognizing a *Bivens* claim, as the issue was neither raised in that case nor addressed by the Court.

While it is not disputed that the standard for finding "a new context is broad," *Hernandez*, 140 S. Ct. at 743, the dispute here centers on *how broad* or, conversely, *how narrow* a court must understand the precedential scope of the *Bivens* cases to be. We conclude that the "new context" standard is sufficiently broad that Tate's conditions-of-confinement claim does indeed arise in a "new context."

The Supreme Court has instructed not only that "new context" must be understood broadly but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations. *See Egbert*, 142 S. Ct. at 1805. While not providing an exhaustive list of distinguishing factors, the Court has noted examples that would support finding a new context, such as (1) "uncertainty alone" as to whether allowing a *Bivens* claim would have systemwide consequences, *Egbert*, 142 S. Ct. at 1804; (2) a "new category of defendants," *Malesko*, 534 U.S. at 68; (3) a difference as small as the "rank of the officers involved," *Ziglar*, 137 S. Ct. at 1860; (4) the "statutory

11

or other legal mandate under which the officer was operating," *id*.; (5) a "potential effect on foreign relations," *Hernandez*, 140 S. Ct. at 744, and "national security," *id*. at 746–47; (6) Congress's "repeatedly declin[ing] to authorize the award of damages" in the relevant context, *id*. at 747; and (7) the risk that "the burden and demand of litigation" would prevent Executive Officials "from devoting the time and effort required for the proper discharge of their duties," *Ziglar*, 137 S. Ct. at 1860.

Thus, for example, in *Tun-Cos*, we considered a Fourth Amendment claim for an unreasonable search and seizure brought by several plaintiffs against U.S. Immigration and Customs Enforcement agents, who were investigating the legality of the plaintiffs' presence in the United States. 922 F.3d at 514. Although the plaintiffs' claim was a straightforward Fourth Amendment claim of the sort allowed in *Bivens* itself, we nonetheless concluded that the case arose in a "new context." We reasoned that the statutory authority under which the agents in *Tun-Cos* operated was different than the statutory authority under which the agents in *Bivens* operated, and the public policies regarding the enforcement of immigration laws were different as well. We thus held that the interests and concerns specific to the immigration context were sufficient to distinguish *Tun-Cos* such that it arose in a new *Bivens* context. *See Tun-Cos*, 922 F.3d at 523–24.

In this case, Tate has brought a broad-based, systemic claim against an array of federal officials, including a Regional Director of the Bureau of Prisons, the Warden of U.S. Penitentiary Lee, and 10 correctional officers. As the district court summarized, Tate claimed that "the cells were unsanitary, cold, and contained uncomfortable mattresses, and that he was denied recreation time and given inadequate amounts of toilet paper and

toothpaste." And he alleged many more similar deficiencies in his conditions of confinement. But while he demanded millions of dollars in damages, he has alleged neither serious physical injury nor any particularized damage from the conditions he challenges. By its very nature, Tate's claim would expand prison officials' liability from previous *Bivens* actions to systemic levels, potentially affecting not only the scope of their responsibilities and duties but also their administrative and economic decisions. In light of such costs, as the *Egbert* Court observed, "Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action" against such officials. *Egbert*, 142 U.S. at 1807 (cleaned up).

While the claim authorized in *Carlson* was, to be sure, also an Eighth Amendment claim, it nonetheless arose in a context different from Tate's. The claim in *Carlson* was narrow and discrete, implicating well-established criteria for liability and damages. In *Carlson*, the inmate's estate claimed that prison officials had failed to treat the inmate's asthma condition, allegedly leading to the inmate's death. Specifically, the estate alleged that prison officials kept the inmate in the prison facility "against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative," and unduly delayed his transfer to a hospital. *Carlson*, 446 U.S. at 16 n.1. Such a claim is, we conclude, materially distinct from a systemic claim based on a collection of prison conditions that could vary from cell to cell, from prison to prison, and from time to time, implicating a broad class of inmates suffering ill-defined injuries with ill-defined damages. Given this meaningful difference,

13

we conclude that Tate's conditions-of-confinement claim is not authorized by *Carlson* but instead arises in a "new context."

Nor does Tate's reliance on *Farmer* advance his cause. In *Farmer*, the Eighth Amendment claim involved the failure of prison officials to protect an inmate from an attack that involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack." 511 U.S. at 831. Importantly, however, while the Court allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim. Moreover, the Court has never considered *Farmer* a *Bivens* case when cataloging *all* of its *Bivens* cases. *See Egbert*, 142 S. Ct. at 1799–1800, 1802; *Hernandez*, 140 S. Ct. at 741, 743; *Ziglar*, 137 S. Ct. at 1854–55, 1857.

C

Tate contends that even if his claim arises in a "new context," there are, nonetheless, "no special factors counseling against what would be an extremely modest extension of *Bivens*" and that the district court erred in refusing to extend *Bivens*. He focuses particularly on facts about the adequacy *vel non* of existing procedures available to address his claim, arguing that there are no satisfactory alternative remedies to redress the wrongs he alleged. While Tate contends that the district court erred in concluding to the contrary — that procedures were available to him to address his claims — the difference between Tate's position and that of the district court is probably beside the point. The Supreme

14

Court has concluded that the absence of a remedy for a wrong is ordinarily for Congress to fix, not the courts. As it recently explained:

> [T]he relevant question is not whether a *Bivens* action would disrupt a remedial scheme . . . or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. Rather, *the court must ask only* whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.

*Egbert*, 142 S. Ct. at 1804 (emphasis added) (cleaned up). Thus, while the Court did not categorically reject the possibility that *Bivens* may still be extended, it nonetheless emphasized that before authorizing any extension, a court must devote special attention to separation-of-powers considerations.

As already noted, the Supreme Court has described a two-step process for analyzing purported *Bivens* claims, prescribing factors for consideration at each step. But in *Egbert*, the Court's most recent *Bivens* case, the Court recognized a substantial overlap between the factors relevant to whether a purported *Bivens* claim arose out of a "new context" and the special factors that counsel hesitation for any extension, often leading to an analysis that addresses just a single question. As the Court observed:

> While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.

142 S. Ct. at 1803. Justice Gorsuch, concurring in the judgment, noted similarly that the Court's opinion "recognizes that our two-step inquiry really boils down to a single question: Is there any reason to think Congress might be better equipped than a court to weigh the costs and benefits of allowing a damages action to proceed?" *Id*. at 1809

15

(Gorsuch, J., concurring in the judgment) (cleaned up). And when answering that question, the Court stated that courts must show "utmost deference" to Congress so as not to "arrogate legislative power." *Id.* at 1803 (majority opinion) (cleaned up). Thus, while courts can attempt to describe the aspect of a cause of action that makes it more suitable for Congress to create, "a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*. . . . [And] [t]hat uncertainty alone is a special factor that forecloses relief." *Id.* at 1803–04 (cleaned up).

In explaining above why Tate's claim arises in a "new context," we noted that his claim seeks to impose liability on prison officials on a systemic level, implicating the day-to-day operations of prisons, affecting the scope of the officials' responsibilities and duties, and implicating policy, administrative, and economic decisions. Determinations about the temperature at which to keep cells, the level of cleanliness at which prison employees or inmates themselves are to maintain cells, the adequacy of toilet paper and toothbrushes, and the length and thickness of mattresses are usually the subject of systemwide executive regulations. Moreover, providing a damages remedy for such inadequacies would involve not only decisions of acceptable human needs but also judgments regarding prison staffing levels, economic considerations, and the most efficient procedures for addressing the inadequacies. As the *Egbert* Court noted:

> The *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed.

16

*Egbert*, 142 S. Ct. at 1805 (cleaned up). We conclude that in this context, the political branches are indeed "better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id*. at 1804 (cleaned up). This is especially so because we are ill-suited to "predict the systemwide consequences of recognizing a cause of action under *Bivens*," and even our "uncertainty" on that question "forecloses relief." *Id*. at 1803, 1804 (cleaned up).

In short, the "special factors" counseling hesitation here in providing a new cause of action are similar in kind to the factors distinguishing Tate's claim from the claim in *Carlson*. Heeding the Supreme Court's warning that courts should not be in the business of creating causes of action and that they must give the legislative branch "utmost deference" in considering whether to do so, our uncertainty is itself sufficient to resolve Tate's claims. The judgment of the district court is accordingly

AFFIRMED.