**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-6206**

_____

EDWARD NELLSON,

                Plaintiff - Appellant,

      v.

JOHN DOE, Warden of USP Hazelton; JOHN DOE, SHU Lt. at USP Hazelton;
GREGORY MIMS; LEIGH BIRD,

                Defendants - Appellees.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at
Wheeling.  John Preston Bailey, District Judge.  (5:20-cv-00112-JPB-JPM)

_____

Argued:  January 27, 2023                                    Decided:  May 10, 2023

_____

Before HARRIS, Circuit Judge, and MOTZ and KEENAN, Senior Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Senior Judge
Motz and Senior Judge Keenan joined.

_____

**ARGUED:**  John Michael Shoreman, MCFADDEN & SHOREMAN, Washington, D.C.,
for Appellant.  Maximillian Fitzsimmons Nogay, OFFICE OF THE UNITED STATES
ATTORNEY, Wheeling, West Virginia, for Appellees.  **ON BRIEF:**  Mario B. Williams,
NDH LLC, Atlanta, Georgia, for Appellant.  William Ihlenfeld, United States Attorney,
Randolph J. Bernard, Acting United States Attorney, Christopher J. Prezioso, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling,
West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Edward Nellson, a federal prisoner, claims that prison officials denied him adequate medical care when they placed him in a special housing unit without a walker or wheelchair despite his inability to walk without assistance, forcing him to crawl on the ground. He sued for damages in federal court, bringing a *Bivens* claim against two sets of federal defendants – two prison administrators and two prison medical professionals – for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. He also raised state-law medical negligence claims against the medical-staff defendants.

The district court entered judgment for all the defendants, and Nellson appealed. For the reasons that follow, we affirm the judgment of the district court.

## I.

Edward Nellson has been in the custody of the federal Bureau of Prisons since 2005, serving a life sentence for robbery and murder. This action concerns only his time at the Hazelton penitentiary in Bruceton Mills, West Virginia, where Nellson was incarcerated from December 2016 to November 2017. But Nellson's medical issues – and prison officials' alleged failure to address them – began earlier, in March 2016, when Nellson fell from his bunk at a different facility and sustained a concussion. According to Nellson, officials at various federal prisons then failed to properly diagnose or treat his injuries, which led to seizures and difficulty walking without an assistive device, until March 2018, when he finally was diagnosed with two herniated disks and a disk extrusion. Nellson sued officials at four separate facilities where he was housed from 2016 to 2019, alleging that

3

all failed to provide him with adequate medical treatment in violation of the Eighth Amendment.

The claims at issue here, severed and transferred to the Northern District of West Virginia, arise solely from Nellson's roughly year-long incarceration at Hazelton. Named as defendants are four Hazelton officials: two prison administrators, former Warden Joseph Coakley and Special Housing Unit Lieutenant James Soule; and two medical professionals, Dr. Gregory Mims and Physician Assistant ("PA") Leigh Bird.

Nellson's Eighth Amendment claims, asserted against all four defendants, center on his alleged placement in Hazelton's Special Housing Unit ("SHU") for months at a time without a walker or wheelchair. According to Nellson, the defendants knew he could not walk unassisted. Nevertheless, he claims, he was left in the SHU to crawl on the floor, causing painful sores on his hands and knees and aggravating his yet-to-be-diagnosed spinal injuries. By way of a *Bivens* action, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Nellson seeks damages from the four federal defendants, alleging that by allowing his placement in the SHU without an assistive device, they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

Nellson also raises state-law medical negligence claims against the two medical-professional defendants, alleging a more general failure to provide him with adequate medical care during his time at Hazelton. Specifically, Nellson alleges, Dr. Mims and PA Bird failed to properly diagnose and treat his spinal injuries and attendant symptoms, including seizures and his difficulty with walking.

4

After Nellson's Hazelton claims were transferred to the Northern District of West Virginia, the defendants moved to dismiss Nellson's complaint for failure to state a claim or, in the alternative, for summary judgment. *See* Fed. R. Civ. P. 12(b)(6) (dismissal); Fed. R. Civ. P. 56 (summary judgment). The district court granted the motion and entered judgment for the defendants. *See Nellson v. Doe*, No. 5:20-cv-00112-JPB-JPM (N.D. W. Va. Jan. 22, 2021), available at J.A. 397–407.

Nellson's Eighth Amendment deliberate indifference claim, the district court held in relevant part, was foreclosed by Nellson's pleadings and the record evidence. *Id.* at 396–401. To establish a constitutional violation, the district court explained, Nellson would have to prove that the defendants "knew of an excessive risk to his health or safety and consciously disregarded that risk." *Id.* at 400; *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994). But there was no allegation, the district court noted, that the two administrator defendants – Warden Coakley and Lieutenant Soule – had any involvement in Nellson's medical care. Instead, as non-medical personnel, they were entitled to rely on the judgment of the prison's medical staff that Nellson did not require an assistive walking device. *Nellson*, J.A. 396–98.

As for Dr. Mims and PA Bird, the district court found, Nellson's medical records demonstrated conclusively that Nellson "was appropriately and timely treated for all medical issues he presented" at Hazelton. *Id.* at 399. Most important here, after a lengthy intake review of Nellson's medical history, PA Bird found nothing to confirm his self-reported need for an assistive device for walking. And while Nellson disagreed with that diagnosis, the court concluded, there was no evidence suggesting that Bird or Mims knew

5

it was incorrect, or otherwise consciously disregarded a known risk to Nellson's health or safety as would be required to make out an Eighth Amendment claim. "[T]he plaintiff merely disagrees with the prison's medical staff as to his diagnosis or course of treatment. However, such a claim . . . does not rise to the level of a constitutional violation." *Id.* at 401.

The district court then turned to Nellson's state-law medical negligence claims against Dr. Mims and PA Bird. Those claims could not go forward, the court held, in part because they were untimely under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), which allows for "damages liability for certain acts of federal employees that violate state law." *Pledger v. Lynch*, 5 F.4th 511, 515 (4th Cir. 2021). Under the FTCA, the district court explained, Nellson was required to exhaust his claim administratively with the Bureau of Prisons ("BOP") and then, if not satisfied, file suit in district court within six months of the BOP's determination. *Nellson*, J.A. 405–06; *see* 28 U.S.C. § 2401(b). But here, the district court concluded, the BOP denied the only relevant administrative claim on March 21, 2019, and Nellson did not file suit until a year later, on March 22, 2020, rendering his action untimely. *Nellson*, J.A. 406.

Nellson appealed. After briefing was completed, the Supreme Court issued its decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), addressing the availability of the *Bivens* cause of action. We asked the parties to file supplemental briefs on whether, in light of *Egbert*, Nellson's Eighth Amendment deliberate indifference claims against federal prison officials are cognizable under *Bivens*.

6

## II.

We understand the district court to have granted summary judgment to the defendants at least in part, relying on record materials outside the complaint to do so. We review that judgment de novo. *See Pledger*, 5 F.4th at 524. Summary judgment is appropriate if, viewing the record in the light most favorable to Nellson as the nonmoving party, there is no genuine dispute of material fact and the defendants are entitled to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56. To the extent the district court granted the defendants' alternative motion to dismiss, our review is likewise de novo. *Pledger*, 5 F.4th at 517. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## A.

We begin with Nellson's damages claims against the two prison-administrator defendants, Warden Coakley and SHU Lieutenant Soule, for alleged violations of his Eighth Amendment rights. In the absence of a statutory cause of action for damages, Nellson relies on the implied cause of action established in *Bivens*. We conclude, however, that Nellson's claims are not cognizable under *Bivens*, and we therefore affirm the district court's judgment in favor of these defendants. *See United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) ("We are entitled to affirm on any ground appearing in the record, including theories not relied upon . . . by the district court." (internal quotation marks omitted)).

7

Since the Supreme Court issued its recent decision in *Egbert*, we have twice considered the availability of *Bivens* claims against federal prison officials. *See Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022) (finding no *Bivens* cause of action for conditions of confinement after placement in SHU); *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) (finding no *Bivens* cause of action for placement of inmate in general population and failure to protect from prisoner-on-prisoner violence). Both opinions detail the arc of the Supreme Court's precedent in this area, *see Tate*, 54 F.4th at 843–45; *Bulger*, 62 F.4th at 135–37, and we will not repeat the full analysis here. For present purposes, what matters is that the Supreme Court has not overruled *Bivens* or its direct progeny – *Davis v. Passman*, 442 U.S. 228 (1979), and, relevant here, *Carlson v. Green*, 446 U.S. 14 (1980), allowing a damages suit against federal prison officials under the Eighth Amendment for deliberate indifference in failing to treat an inmate's serious medical needs. *See Bulger*, 62 F.4th at 136 (describing cases). But at the same time, the Supreme Court has "scaled back *Bivens* significantly" and "consistently rebuffed" every effort to expand *Bivens* beyond those three cases. *Id.* (internal quotation marks omitted); *see Tate*, 54 F.4th at 843.

We are left with a "highly restrictive two-step analysis for *Bivens* cases," intended to "severely limit the reach of *Bivens*." *Bulger*, 62 F.4th at 137. First, a court must determine whether a claim falls within the causes of action already authorized by the Supreme Court's *Bivens* trilogy – *Bivens*, *Davis*, and *Carlson* – or "whether it arises in a new context or involves a new category of defendants." *Id.* at 137 (internal quotation marks omitted) (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)). The Supreme Court's understanding of a "new context" is broad, requiring only some "meaningful" difference

from a previous *Bivens* case. *See Tate*, 54 F.4th at 844. If a claim does not "fall precisely under *Bivens*, *Davis*, or *Carlson*," then the court proceeds to the second step, asking whether there are "any special factors that counsel hesitation about granting [an] extension of *Bivens*." *Id.* at 844–45 (internal quotation marks omitted). Here, we are instructed to focus on separation-of-powers principles, and whether it can be said that a court, "rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *See id.* at 847 (quoting *Egbert*, 142 S. Ct. at 1804).

Nellson's primary argument is that he prevails at the first step of this analysis: His case does not present a "new context" because it is squarely governed by *Carlson*. In his case, he explains, he alleges that Warden Coakley and Lieutenant Soule violated his Eighth Amendment rights by approving his months-long placement in the SHU, with no access to a walker or wheelchair, in deliberate indifference to his serious medical needs. And the Supreme Court already has approved, in *Carlson*, an implied cause of action for Eighth Amendment violations by prison officials who exhibit deliberate indifference to an inmate's serious medical or health needs. So there is nothing "new" about this context, Nellson finishes, and his claim may proceed under *Carlson*.

We cannot agree. It is not enough, as we have made clear, that a case involves the same constitutional provision or the same right as in *Carlson*; that level of generality is too high. *See Bulger*, 62 F.4th at 138. For these purposes, the Supreme Court instructs, "courts should not interpret *Carlson* to apply outside the precise context at issue in that case." *Id.* Even claims alleging deliberate indifference to an inmate's medical needs, though they

9

"involve the same 'right and mechanism of injury' as in *Carlson*," may "still present 'different' contexts." *Id.* (alteration omitted) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 138–39 (2017)).

This is just such a case. The alleged constitutional violations at issue in *Carlson* arose from prison officials' failure to provide competent medical care after an inmate suffered a severe asthma attack, leading to his death. 446 U.S. at 16 & n.1. In contrast, as the district court observed, Nellson does not allege any involvement, direct or indirect, by the two prison administrators in his medical care. Instead, with respect to these defendants, Nellson challenges what is by his own account a purely administrative decision: his placement in the SHU, where standard policy, for safety and security reasons, does not permit mobility devices. *See* Opening Br. of Appellant at 13 ("Nothing in the record supports that this was a medical decision."). That makes this case less like *Carlson*, which turned on decisions about an inmate's *medical* care, and more like *Tate* and *Bulger*, in which we held that claims arising from administrative *placement* decisions fall outside *Carlson*'s "context." *See Tate*, 54 F.4th at 846–47 (finding "materially distinct" from *Carlson* a deliberate indifference claim that placement in SHU exposed inmate to conditions that put his health at risk); *Bulger*, 62 F.4th at 138 (same for deliberate indifference claim that placement of inmate in general population without protection from other prisoners led to his death). Such claims are meaningfully different from *Carlson*, we explained, because they implicate "organizational policies, administrative decisions, and economic concerns inextricably tied to inmate transfer and placement determinations." *Bulger*, 62 F.4th at 138.

We do not doubt that a prison administrator's failure to accommodate an inmate's serious medical condition or need in making a placement could, under certain circumstances, give rise to an Eighth Amendment claim. *See Short v. Smoot*, 436 F.3d 422 (4th Cir. 2006) (analyzing Eighth Amendment claim of deliberate indifference to substantial risk that inmate would commit suicide); *Brown v. Lamanna*, 304 F. App'x 206 (4th Cir. 2008) (per curiam) (analyzing Eighth Amendment claim of deliberate indifference through placement of inmate in SHU without crutches). But the question here is whether that claim is meaningfully different, for *Bivens* purposes, from a *Carlson* claim regarding the adequacy of the medical treatment provided to an inmate. Under the "highly restrictive" standard we must apply, *see Bulger*, 62 F.4th at 137, we think the answer is yes.

We thus turn to the second step of our inquiry: whether there are special factors counseling against an extension of *Bivens*, or, in *Egbert*'s terms, "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Bulger*, 62 F.4th at 140 (internal quotation marks omitted) (quoting *Egbert*, 142 S. Ct. at 1803). We held in both *Tate* and *Bulger* that special factors do indeed counsel against extending *Bivens* in the prison context. *See Bulger*, 62 F.4th at 139–42; *Tate*, 54 F.4th at 847–48. We reach the same conclusion here for substantially the same reasons. As *Bulger* explains, Congress's decision not to include an individual-capacity damages remedy in the Prison Litigation Reform Act "speaks volumes and counsels strongly against judicial usurpation of the legislative function." 62 F.4th at 141 (internal quotation marks omitted). Likewise, the existence of an alternative remedial structure for prisoners, even if it is not

11

as effective as a suit for damages, weighs heavily against recognizing a new *Bivens* cause of action. *Id.* at 140–41 (describing equitable remedies available to inmates). Under *Egbert*, it is clear that "even one" such factor is enough to foreclose an extension of *Bivens*, *see* 142 S. Ct. at 1805, leaving Nellson without a cognizable cause of action for damages against Warden Coakley and Lieutenant Soule.

**B.**

We turn next to Nellson's claim for damages against the two medical-staff defendants, Dr. Mims and PA Bird, for alleged violations of his Eighth Amendment rights through deliberate indifference to his serious medical needs. Here again, Nellson relies on an implied *Bivens* cause of action, arguing that his claims are identical to the deliberate indifference claim recognized in *Carlson*. Insofar as Nellson alleges a denial of adequate medical treatment by these defendants, we agree that he is at least within striking distance of *Carlson*. But we need not decide whether such a claim would "fall precisely" enough under *Carlson*, or whether there still might be some meaningful difference, *see Tate*, 54 F.4th at 845, because to the extent Nellson has raised such a claim, he cannot prevail on it.

Nellson's Eighth Amendment deliberate indifference claim, set out in the first count of his complaint, is based on just one allegation: that the defendants violated his constitutional rights by "approving [his] placement in the SHU" and "refusing to provide him with a wheelchair or walker," despite their knowledge that he could not walk unassisted. J.A. 180. But while the complaint alleges that all four defendants are liable under this theory, Nellson has now conceded that Dr. Mims and PA Bird had nothing to do

12

with his placement in the SHU without an assistive device.  According to Nellson, his placement in the SHU was an entirely administrative decision, made without input from any medical professional:  "There is no evidence or allegation that medical personnel recommended placing Mr. Nellson in the SHU or that they recommended he be placed there without a walker or a wheelchair."  Opening Br. of Appellant at 14.  Given Nellson's own framing of his case, there appears to be no ground on which to hold Dr. Mims or PA Bird liable for the only Eighth Amendment violation he has alleged.[1]

Some of the factual recitations in Nellson's complaint, to be sure, do implicate Mims and Bird, referencing other occasions, separate from the time in the SHU, on which they allegedly misdiagnosed Nellson's injuries or failed to provide him with appropriate treatment.  Because those factual allegations have no bearing on the Eighth Amendment claim described in Nellson's complaint, we think they are fairly read as pertaining only to Nellson's separate count for medical negligence.  But however Nellson's allegations regarding Mims and Bird were intended, we agree with the district court that they in fact "describ[e] behavior that might support a medical malpractice claim" but "do not make out

---

[1] Nellson's amended complaint includes a separate *Bivens* "supervisory capacity" count against Dr. Mims, as well as the two administrator defendants.  J.A. 180–81.  But there is no factual allegation in the complaint describing any action taken by either administrator defendant in a supervisory capacity, nor are there any factual allegations describing any action taken by Dr. Mims in a supervisory capacity with regard to the defendants that Nellson claims Dr. Mims supervised.  On these grounds alone, we may affirm the district court's dismissal of Nellson's "supervisory capacity" *Bivens* claim against these defendants.

13

a case of deliberate indifference." *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

As the district court explained, the subjective component of a deliberate indifference claim requires more than a showing of negligence; only if a prison official "subjectively 'knows of and disregards an excessive risk to inmate health or safety'" is the Eighth Amendment violated. *See Jackson*, 775 F.3d at 178 (quoting *Farmer*, 511 U.S. at 837). And here, as the district court found, the record gives no indication that Mims or Bird either knew of or consciously disregarded any such risk to Nellson's health. Instead, Nellson's prison medical records demonstrate conclusively that PA Bird conducted an extensive review of Nellson's medical history on intake, finding no evidence that Nellson had been diagnosed with "Balance Equilibrium Disorder" or otherwise required assistance with walking, as he reported. And after that, Hazelton's medical staff provided care to Nellson in accordance with the treatment plan outlined by Bird, and also as needed to address emergent issues – such as Nellson's reported seizure, which led to referrals for multiple neurological examinations, an EEG, and treatment by medication. Nellson, of course, alleges that Bird's intake diagnosis was mistaken, and that Bird and Mims should have done more to identify and treat his impaired mobility and other symptoms. But even if we assume that is true, it is not enough to make out a claim for deliberate indifference. *Cf. Jackson*, 775 F.3d at 178 ("[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge . . . ."). Nellson's claims against Dr. Mims and PA Bird are essentially "disagree[ments] . . . as to his diagnosis or course of treatment," as the district court concluded, *Nellson*, J.A. 401, and such disagreements, we

14

consistently have found, fall short of deliberate indifference under the Eighth Amendment. *Jackson*, 775 F.3d at 178.

## C.

Finally, we agree with the district court that Nellson's state-law medical negligence claims against Dr. Mims and PA Bird, construed as claims against the United States brought pursuant to the FTCA,[2] are barred by the FTCA's six-month statute of limitations. Nellson does not meaningfully dispute this conclusion on appeal, and so we address it only briefly.

As the district court explained, under the FTCA, a claimant must exhaust his administrative remedies before initiating an action in federal court. *See* 28 U.S.C. § 2675. After final denial of an administrative tort claim or qualifying agency inaction, the claimant may file suit in an appropriate federal court, but he must do so within six months. 28 U.S.C. § 2675; 28 U.S.C. § 2401(b).

Before initiating the instant suit, Nellson submitted multiple administrative tort claims to the BOP, only one of which concerned activity at Hazelton. In a letter dated March 21, 2019, the BOP denied that claim and notified Nellson that he had six months to file suit in federal court. *See* 28 C.F.R. § 14.9(a) (final denial of administrative claim "shall

---

[2] Per Nellson's request, the district court treated his medical negligence claims as raised under the FTCA, which provides the exclusive remedy for claimants seeking damages for torts committed by federal employees acting in the scope of their employment. *See* 28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S. 160, 165–66 (1991). The FTCA effects a limited waiver of sovereign immunity for such tort claims, permitting the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred. 28 U.S.C. § 1346(b)(1).

15

include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification"). Nellson nevertheless waited to file the initial complaint in this action until March 22, 2020, a full year after the BOP denied his administrative claim. Consequently, and as the district court found, Nellson's medical negligence claims are untimely.[3]

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[3] The district court also dismissed Nellson's medical negligence claims on an alternative ground: that Nellson failed to comply with West Virginia's pre-suit notice and certification requirement for medical negligence cases. *See* W. Va. Code § 55-7B-6. After the district court issued its order, however, we held in *Pledger* that such state-law requirements "are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court." 5 F.4th at 513–14. Accordingly, that part of the district court's ruling was in error, and we do not rely on that ground here. *See id.*