**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 20-7540

---

JOSEPH RANDOLPH MAYS,

        Plaintiff – Appellant,

v.

T. B. SMITH, Warden, FCI Butner 1; S. MA'AT, Assoc. Warden, FCI Butner 1; JAMIE HOSKINS, Unicor Factory Manager; V. WILLIS, Unit Manager; J. HALFAST, Case Manager; R. MARTIN, Counselor; LT.  CHRISTOPHER; K. HENDRY; OFFICER V. WILKINS; OFFICER GLASS; OFFICER SLAYDON; OFFICER LASSITAR; J. CARAWAY, Regional Director; JOHN/JANE DOES,

        Defendants – Appellees,

and

UNITED STATES OF AMERICA,

        Party-in-Interest.

-------------------------------

RIGHTS BEHIND BARS; RODERICK & SOLANGE MACARTHUR JUSTICE CENTER,

        Amici Supporting Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:18-ct-03186-FL)

---

Argued:  May 3, 2023                    Decided:  June 6, 2023

Before WYNN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Richardson and Senior Judge Traxler joined.

**ARGUED:**  Devin L. Redding, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  Marie Cepeda Mekosh, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellee.  **ON BRIEF:**  Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant.  Michael F. Easley, Jr., United States Attorney, Sharon C. Wilson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.  Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C.; Easha Anand, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, San Francisco, California, for Amici Curiae.

WYNN, Circuit Judge:

Joseph Mays, a federal inmate, brings claims under the Fifth Amendment for money damages against federal prison officials for alleged violations of procedural due process and equal protection. Mays contends his claims are authorized by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny. But "the Supreme Court [has] all but closed the door on *Bivens* remedies" that do not fit within the precise confines of its prior *Bivens* cases. *Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022). Such is the case here. Accordingly, we affirm the district court's dismissal of the case.

I.

On review, we must accept as true the facts as alleged in the complaint. *Langford v. Joyner*, 62 F.4th 122, 123 (4th Cir. 2023).

In June 2016, Mays was housed at FCI Butner in North Carolina, where he was employed as a lead mechanic in the optics factory through the Bureau of Prisons' ("BOP") UNICOR employment program. On June 20, Mays submitted a grievance directly to the BOP's regional director complaining that his UNICOR manager, Defendant Jamie Hoskins, engaged in racial discrimination and gave preferential treatment to other inmates who worked in the optics factory. Five days later, Mays submitted a second grievance to the regional director complaining that two prison officials retaliated against him by falsely claiming he was malingering and using abusive language at his job. The regional director instructed Mays to resubmit both complaints directly to his institution, which he did. On

3

July 29, several Defendants met with Mays and attempted to informally resolve his complaints.

On August 10, Defendant S. Ma'at, the associate warden at FCI Butner, confronted Mays and accused him of "giving his secretary . . . a hard time," which Mays denied. J.A. 29.[1]

On August 11, Hoskins and Ma'at met with Mays in the Butner dining hall to address Mays's concerns about his UNICOR job. During this meeting, Hoskins falsely accused Mays of trying to disrupt the optics factory, and Ma'at threatened to fire Mays from UNICOR. Later that day, Mays was in fact fired from his job. According to the termination notice, Mays was fired for "making threatening comments" and threatening to cause a work stoppage. J.A. 84. That same day, Mays was also placed in administrative detention. The detention order did not specify a reason for that placement, but Defendant Officer Glass told Mays "off the record" that it was because "someone 'got in their feelings' because you filed a grievance" and that Ma'at and Hoskins did not want Mays to remain at FCI Butner. J.A. 33.

Mays remained in detention from August 11 through October 21, despite officials at FCI Butner opting, after an investigation, not to charge him with any disciplinary offense. Ultimately, on October 21, Mays was transferred from FCI Butner to another BOP institution. The transfer form stated that Mays had "maintained poor institutional adjustment" to Butner, including allegations that he had threatened staff and threatened a

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

work stoppage at UNICOR—all of which Mays disputed. J.A. 74. Mays filed two more grievances—in September 2016 and June 2017—complaining that he was denied due process via his detention, firing from UNICOR, and transfer.

Mays, proceeding *pro se*, filed a federal complaint in July 2018. The district court conducted a frivolity review and dismissed several claims. *See* 28 U.S.C. § 1915(e)(2)(B) (district court shall dismiss any action filed by an inmate that is "frivolous" or fails to state a claim). The court permitted Mays to file an amended complaint asserting three *Bivens*-based claims for 1) First Amendment retaliation; 2) Fifth Amendment due process, alleging Defendants placed him in administrative detention, terminated him from his UNICOR position, and transferred him to another institution without providing notice or an opportunity to rebut the allegations; and 3) Fifth Amendment equal protection, alleging racial discrimination. Defendants moved to dismiss, and the district court granted their motion after finding that Mays failed to state cognizable *Bivens* claims.[2] Mays timely appealed, and we appointed counsel to represent him on appeal.[3]

---

[2] The district court also analyzed whether Mays exhausted his administrative remedies with the BOP as required before filing his complaint, *see* 42 U.S.C. § 1997e(a) (stating exhaustion requirement), ultimately holding that there was at least a genuine dispute on the issue, before disposing of Mays's case on the merits. Defendants do not address the issue on appeal. Because administrative exhaustion in this context is not a jurisdictional requirement, we can proceed directly to the merits of Mays's *Bivens* claims. *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677–78 (4th Cir. 2005).

[3] Counsel—Lawrence Rosenberg and students from the West Virginia University College of Law U.S. Supreme Court Litigation Clinic—have ably represented Mays on appeal, and we are grateful for their important service to Mays and this Court.

II.

Counsel for Mays has elected not to pursue the First Amendment-based *Bivens* claim. This was the correct decision, as both the Supreme Court and this Court have held in the interim between when Mays originally appealed *pro se* and when he was appointed counsel "that there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022); *see Earle v. Shreves*, 990 F.3d 774, 776 (4th Cir.) (declining to extend *Bivens* to include a "federal inmate's claim that prison officials violated his First Amendment rights by retaliating against him for filing grievances"), *cert. denied*, 142 S. Ct. 358 (2021). Accordingly, the only remaining *Bivens* claims before us are for the denial of procedural due process and equal protection, both brought under the Fifth Amendment. We review de novo the district court's dismissal of these claims. *Annappareddy v. Pascale*, 996 F.3d 120, 132 (4th Cir. 2021).

III.

A.

The *Bivens* story is by now a familiar one. Although § 1983 gives plaintiffs the statutory authority to sue *state* officials for money damages for constitutional violations, *see* 42 U.S.C. § 1983, there is no statutory counterpart to sue *federal* officials.

In *Bivens*, the Supreme Court held for the first time that there existed an *implied* cause of action under the Fourth Amendment to sue federal officials for money damages arising from an unreasonable search and seizure. *Bivens*, 403 U.S. at 389. In the ensuing decade, the Supreme Court found two more such implied causes of action for money damages for constitutional violations by federal officials—one for gender discrimination

6

in violation of the equal protection component of the Fifth Amendment's due process clause, *Davis v. Passman*, 442 U.S. 228, 230 (1979), and a second for deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 18 (1980).

In the more than four decades since, however, "the [Supreme] Court has 'consistently rebuffed' every request—12 of them now—to find implied causes of action against federal officials for money damages under the Constitution." *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022) (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)). And in the past six years in particular, the Supreme Court has "handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them." *Id.* While not opting to overrule its three *Bivens* cases, the Court has noted that the outcomes "might have been different if [those cases] were decided today." *Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017). The Court has made clear that expanding the *Bivens* remedy to a new context is an "extraordinary act," *Egbert*, 142 S. Ct. at 1806 n.3 (citation omitted), that will be unavailable "in most every case," *id.* at 1803. And it has imposed a "highly restrictive" analysis for future *Bivens* cases. *Tate*, 54 F.4th at 844.

To that end, a court must engage in a "two-step inquiry" when analyzing would-be *Bivens* claims. *Hernandez*, 140 S. Ct. at 743. First, the court must determine whether a claim falls within the causes of action already authorized under the Supreme Court's three prior *Bivens* cases or whether it "arises in a new context or involves a new category of defendants." *Tate*, 54 F.4th at 844 (internal quotation marks omitted) (quoting *Hernandez*,

7

140 S. Ct. at 743). The Court's understanding of a "new context" is "broad," which means that the scope of the existing *Bivens* actions must be narrowly construed. *Id.*

Second, if a claim does arise in a new context, the court must ask "whether there are any special factors that counsel hesitation about granting the extension" of the *Bivens* remedy. *Id.* The "special factors" inquiry must focus on "separation-of-powers principles" and "requires courts to ask whether judicial intrusion into a given field is appropriate." *Bulger v. Hurwitz*, 62 F.4th 127, 137 (4th Cir. 2023) (quoting *Hernandez*, 140 S. Ct. at 743). If "there is *any* reason to think that Congress might be better equipped to create a damages remedy," then the court must decline to extend *Bivens* to a new context. *Egbert*, 142 S. Ct. at 1803 (emphasis added).

Given this legal backdrop, "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under" the three existing *Bivens* cases. *Tate*, 54 F.4th at 845. And this Court has "repeatedly heeded" that warning, expressly declining to extend *Bivens* on numerous occasions over just the last few years. *Bulger*, 62 F.4th at 137–38 (collecting cases).

With this background in mind, we turn to Mays's two remaining *Bivens* claims. We conclude that under the Supreme Court's current framework, neither presents a cognizable claim.

## B.

First, Mays's two remaining claims arise in a new context. This is a low bar because even "quite minor" differences between a proposed claim and the claims in the three

8

existing *Bivens* cases can amount to a new context. *Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019).

The only Fifth Amendment-based *Bivens* claim that the Supreme Court has recognized was the one in *Davis*, which "concerned alleged sex discrimination on Capitol Hill." *Hernandez*, 140 S. Ct. at 744; *see Davis*, 442 U.S. at 230. Here, Mays seeks to bring two different Fifth Amendment claims, for procedural due process and for discrimination based on race. The Supreme Court has never authorized a *Bivens* claim for procedural due process or race-based discrimination. *See Annappareddy*, 996 F.3d at 134 ("*Bivens* has never been extended to a Fifth Amendment due process claim." (internal quotation marks omitted)); *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (holding that multiple Fifth Amendment-based claims—"including violations of [the] right to parentage, to familial relations and to equal protection of the laws"—present new *Bivens* contexts); *see also Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.").

Further, Mays's claims are brought against a "new category of defendants"—prison officials, as opposed to a former Congressman in *Davis*—operating in a different legal and factual context (prisoner litigation). *Tate*, 54 F.4th at 846. Expanding *Bivens* to these types of claims would likely have "systemwide consequences" for the BOP in the form of increased litigation, and Congress has so far declined to create a damages remedy for these types of actions against federal prison officials. *See id.* (identifying these factors as relevant to the new-context inquiry).

9

We do not find Mays's reliance on *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), to be compelling. In that case, the Third Circuit recognized an inmate's Fifth Amendment-based *Bivens* claim against federal prison officials for their alleged failure to protect him from inmate violence. *Id.* at 90–94. In doing so, the *Bistrian* court put near-dispositive weight on the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994), which involved a *Bivens* action under the Eighth Amendment against prison officials for their failure to protect an inmate from a violent assault. *Id.* at 830–31.

But "while the [Supreme] Court allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim." *Tate*, 54 F.4th at 847. Also, since *Bistrian* was decided, the Supreme Court "has made clear that the universe of recognized *Bivens* claims consists of only three cases"—which do not include *Farmer*—and "lower courts should not interpret these cases to apply outside the precise contexts at issue." *Bulger*, 62 F.4th at 139. As we recently stated, and reiterate here, *Bistrian* may very well have come out differently if the Third Circuit had the benefit of the Supreme Court's more recent *Bivens* guidance in *Hernandez* and *Egbert*. *See id.* In any event, *Bistrian* does not aid Mays here given the multiple differences between his claims and the claims recognized in the three existing *Bivens* cases. And even if *Farmer was* an appropriate *Bivens* action, it still would not help Mays given the significant differences between that case—which involved an Eighth Amendment failure-to-protect claim—and his claims here.

Mays also argues that his claims do not present a new context because both "arise under the Fifth Amendment" just like the claim approved of in *Davis*. Opening Br. at 43. But citation to the constitutional provision alone is insufficiently granular for the new-

10

context inquiry. *See Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Cantu*, 933 F.3d at 422 ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" (citation omitted)). We know this to be so, because even where a case involves "similar allegations" or "almost parallel circumstances," such "superficial" similarities "are not enough to support the judicial creation of a cause of action." *Egbert*, 142 S. Ct. at 1805 (citation omitted). After all, "even a modest extension [of *Bivens*] is still an extension." *Ziglar*, 582 U.S. at 147.

The Supreme Court's own treatment of its prior *Bivens* cases is telling. For example, *Bivens* permitted a damages claim under the Fourth Amendment against a federal narcotics officer for excessive force while *Egbert* rejected a virtually identical claim against a Border Patrol agent. *Compare Bivens*, 403 U.S. at 389 (complaint alleged officer used "unreasonable force" in making an arrest in violation of the Fourth Amendment), *with Egbert*, 142 S. Ct. at 1802 (complaint alleged a "Fourth Amendment violation for excessive use of force"); *see also Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring) ("The plaintiff [in *Egbert*] is an American citizen who argues that a federal law enforcement officer violated the Fourth Amendment . . . . Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

Similarly, while *Carlson* permitted a damages claim under the Eighth Amendment for a federal prison official's failure to provide medical care, the Court later rejected a nearly identical suit against a private prison operator. *Compare Carlson*, 446 U.S. at 16 &

11

n.1 (complaint alleged violation of Eighth Amendment for failure to provide adequate medical care), *with Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63–65, 73 (2001) (same). Although the circumstances of the two cases were "almost parallel"—involving the same Eighth Amendment right and the same failure to provide adequate medical treatment—the Supreme Court nevertheless determined the "contexts" to be different. *Ziglar*, 582 U.S. at 139.

Mays's claims may "mirror" those in *Davis*. Opening Br. at 38. But reflection is not enough: "a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846 (citing *Egbert*, 142 S. Ct. at 1805). For the reasons given, we conclude that Mays's procedural due process and race-based equal protection claims have distinguishing factors from the Supreme Court's three *Bivens* cases such that each arises in a "new context."

## C.

Special factors also counsel against extending the *Bivens* remedy to cover Mays's claims. The Supreme Court has distilled this inquiry down to a single question: whether "there is *even a single reason* to pause before applying *Bivens* in a new context." *Egbert*, 142 S. Ct. at 1803 (emphasis added) (citation and internal quotation marks omitted). Central to this inquiry are "separation-of-powers principles," which require us to ask whether the courts are better suited than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 140 S. Ct. at 743 (citation omitted). The answer is almost always no.

So, too, here. We recently dealt with a highly analogous situation in *Bulger v. Hurwitz*. In that case, we declined to extend *Bivens* to cover a federal inmate's Eighth Amendment failure-to-protect claim. *Bulger*, 62 F.4th at 140. As to the special-factors prong, we concluded that "multiple special factors counsel against creating a new *Bivens* remedy." *Id.* Consideration of the same factors compels the same result in this case.

First, Mays's claims would "require scrutiny of new categories of conduct and a new category of defendants—namely, BOP employees involved in transferring inmates and managing the agency's housing system" and BOP employees involved in inmate discipline and employment, such as through the UNICOR program. *Id.*

Second, and related, Mays's claims "intersect with the statutory scheme delegating authority over prison designation, transfer, and housing decisions to the BOP," as well as those governing prison discipline and inmate employment. *Id.*; *see* 18 U.S.C. § 3621(b). Indeed, we recently rejected a similar complaint from an inmate placed in administrative detention as "rais[ing] serious questions relating to the reasoning, manner, and extent of prison discipline," noting that allowing a *Bivens* action for such claims "could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts." *Earle*, 990 F.3d at 780–81 (citation and internal quotation marks omitted).

Third, inmates such as Mays have an "alternative remedial structure" that allows them to seek equitable relief for issues related to confinement, discipline, and the like. *Bulger*, 62 F.4th at 140 (quoting *Ziglar*, 582 U.S. at 137). Specifically, the BOP's Administrative Remedy Program allows all inmates to seek formal review of an issue related to "any aspect" of their confinement. *Id.* (quoting 28 C.F.R. § 542.10(a)). As the

13

Supreme Court has noted, the Administrative Remedy Program provides a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Malesko*, 534 U.S. at 74.

To be sure, the Administrative Remedy Program does not provide a damages remedy as a *Bivens* claim would, but "the relevant question 'is not what remedy the court should provide for a wrong that would otherwise go unredressed' but instead 'whether an elaborate remedial system should be augmented by the creation of a new judicial remedy.'" *Tun-Cos*, 922 F.3d at 527 (alterations omitted) (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). And as we have observed, "[t]he potential unavailability of a remedy in a particular circumstance does not warrant supplementing that scheme." *Bulger*, 62 F.4th at 141. This also disposes of Mays's argument that his allegations involve only individual instances of constitutional deprivations that are best remedied by damages actions. That may be, but the Supreme Court has made abundantly clear that it is for *Congress* to decide whether to "augment[]" any existing remedial scheme with a damages remedy. *Tun-Cos*, 922 F.3d at 527. It has not done so.

Fourth, Congress has frequently legislated in the area of prisoner litigation, most notably with the Prison Litigation Reform Act, but has so far declined to create an individual-capacity damages remedy for federal inmates. *See id.* The Prison Litigation Reform Act—which was enacted *after* the Supreme Court's three *Bivens* decisions— "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Ziglar*, 582 U.S. at 148. Importantly, the Act "does not provide for a standalone damages remedy against federal jailers," *id.* at 149, a silence that "speaks volumes and

14

counsels strongly against judicial usurpation of the legislative function" to create one, *Bulger*, 62 F.4th at 141 (quoting *Tun-Cos*, 922 F.3d at 527).

Fifth, and finally, if we were to authorize this new category of prison litigation, claims like Mays's would almost certainly "impose liability on prison officials on a systemic level" and amount to a "substantial burden" on government officials. *Id.* Mays couches his suit as an attempt to redress only "individual instances of discrimination and law enforcement overreach." Opening Br. at 22. But this is the wrong level of specificity. The operative question is "whether a court is competent to authorize a damages action not just against" the individual officers in the case at hand, but against all similarly situated officials "generally." *Egbert*, 142 S. Ct. at 1806.

"The answer, plainly, is no." *Id.* The BOP currently employs more than 34,000 employees overseeing nearly 160,000 inmates across almost 130 institutions. Fed. Bureau of Prisons, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited June 2, 2023) (saved as ECF opinion attachment); Fed. Bureau of Prisons, *About Our Facilities*, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited June 2, 2023) (saved as ECF opinion attachment).[4] Were we to expand *Bivens* to cover Mays's suit, it could open the door for increased litigation over the myriad decisions made every day regarding

---

[4] The Court takes judicial notice of these uncontested facts from Defendants' Response Brief, which are publicly available on the BOP's website. *United States v. Doe*, 962 F.3d 139, 147 & n.6 (4th Cir. 2020) (taking judicial notice of governmental reports and generally known facts); *Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004) ("[I]ndisputable facts are susceptible to judicial notice." (citing Fed. R. Evid. 201(b)).

15

inmate discipline, transfer, and employment across the entire BOP system. But even "uncertainty alone" about such "systemwide" consequences "forecloses relief." *Egbert*, 142 S. Ct. at 1803–04. Rather, if there is "*any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" we must decline to extend *Bivens*. *Id.* at 1805 (quoting *Ziglar*, 582 U.S. at 136). As discussed, such reasons exist here.

Accordingly, because Mays's claims would expand *Bivens* to a "new context" and because there are "special factors" counseling against our doing so, his Fifth Amendment-based claims are not cognizable.

IV.

Because this matter does not fit within the precise confines of the Supreme Court's *Bivens* cases, we must adhere to the Supreme Court's direction and affirm the district court's grant of Defendants' motion to dismiss.

*AFFIRMED*

16