# United States Court of Appeals
## For the First Circuit

No. 22-1307

DARWIN QUINONES-PIMENTEL; VICTOR VEGA-ENCARNACION; NAICOM
CORPORATION; NAICOM DATA CENTER; ARTIST DESIGNS & MANAGEMENT
CORPORATION; KIARAS, LLC,

Plaintiffs, Appellants,

v.

NICHOLAS W. CANNON, in his personal and individual capacity as
Assistant United States Attorney for the District of Puerto
Rico; DOUGLAS A. LEFF, in his personal and individual capacity
as former FBI Special Agent in charge of San Juan Division; BRAD
REX; LANCE LANGE; KEVIN PEARSON; ANDREW BAKER; CHRIS KUHN; CELIA
MAHLER; CLAY REHRIG; NOAH EAMES; JUSTIN TURNER; MARK ETHERIDGE;
CLINT NAFAY; JUAN GALARZA; JASON LOPEZ; UNITED STATES; EMILY
RINKEL; JORDAN SMITH; KEVIN GEDEON; BERT EICHHORN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. John A. Woodcock, Jr.,* U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Thompson, Circuit Judges.

Rafael F. Castro Lang for appellants.
Daniel Aguilar, Appellate Staff Attorney, Civil
Division, United States Department of Justice, with whom Brian M.
Boynton, Principal Deputy Assistant Attorney General, W. Stephen

---

* Of the District of Maine, sitting by designation.

Muldrow, United States Attorney, and Mark B. Stern, Appellate Staff Attorney, Civil Division, United States Department of Justice, were on brief, for appellees Nicholas W. Cannon, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Pearson, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and United States of America.

       Kronsky K. Sherer, with whom Chad M. Hagan, Hagan Noll & Boyle, LLC, Jose L. Ramirez-Coll, and Antonetti Montalvo & Ramirez-Coll were on brief, for appellees Emily Rinkel, Jordan Smith, Kevin Gedeon, and Bert Eichhorn.

---

October 27, 2023

---

**THOMPSON, <u>Circuit Judge</u>.** After being subjected to alleged unconstitutional searches and seizures, Appellants filed suit seeking money damages pursuant to <u>Bivens</u> v. <u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[1] Disagreeing with Appellants' take on the matter, Appellees filed motions to dismiss, which the district court granted. Appellants, unhappy with the district court's decision, brought the case to us. Having carefully considered all arguments, we affirm, albeit on narrower reasoning than the district court.

## I.

To begin, we turn to the factual[2] and procedural background (appropriately abbreviated) for context.

Appellants here include (among others) Naicom Corporation ("Naicom"), a network and internet communication platform, and its co-founders, Darwin Quinones-Pimentel ("Quinones") and Victor Vega-Encarnacion ("Vega"). Appellees, on the other hand, include an Assistant United States Attorney ("AUSA") for the District of Puerto Rico (and several other

---

[1] We will explain in greater detail below but, for now, we note that a <u>Bivens</u> claim is an implied cause of action against federal actors for constitutional violations. <u>Hernandez-Cuevas</u> v. <u>Taylor</u>, 723 F.3d 91, 93 n.1 (1st Cir. 2013).

[2] As this is an appeal from grants of motions to dismiss, we accept as true the complaint's well-pleaded facts and draw all reasonable inferences in Appellants' favor. <u>Fothergill</u> v. <u>United States</u>, 566 F.3d 248, 251 (1st Cir. 2009).

unidentified AUSAs), Special Agents and employees of the Federal Bureau of Investigation ("FBI"), and private parties employed by companies Dish Network and NagraStar (alleged Naicom competitors).[3]

Believing that Naicom was a threat to their business, the Dish and NagraStar Appellees investigated Naicom for piracy. Despite not finding any evidence to support their investigation, the Dish and NagraStar Appellees complained to the FBI Appellees, alleging that Naicom was running a pirate operation. According to Appellants, the Dish and NagraStar Appellees did so to secure their own participation in the execution of search warrants of Naicom's offices and Data Center and, while performing said searches, get access to Naicom's confidential intellectual property and trade secrets.

Starting in September 2017, the Dish and NagraStar Appellees worked with the FBI Appellees during the FBI's criminal investigation of Naicom. This investigation culminated in the AUSA and FBI Appellees securing two search warrants: one for Naicom Corporation, located at 701 Ponce de Leon, Suite 208, and one for Naicom's Data Center, located at 4SS N2 Via Josefina.

---

[3] Up to this point and moving forward, our use of "Appellants" and "Appellees" refers to all Appellants and Appellees, respectively. Where our opinion needs to specify a particular Appellee or Appellees for clarity, we identify them as "AUSA Appellee," "FBI Appellees," and "Dish and NagraStar Appellees."

Appellants say that these warrants were procured based upon knowingly false and perjured statements.

On August 27, 2019, the FBI, Dish, and NagraStar Appellees searched Suite 208 and seized documents, two hard drives, two USB drives, one cell phone, and one tablet, all containing business trade secrets and intellectual property information. During that search, the same Appellees searched Suite 207, which was the headquarters of Vega's other business, Artist Designs & Management Corporation (also an Appellant here), despite being informed by a Naicom staff member that Suite 207 belonged to an independent business and was not included in the search warrant. In Appellants' view, this search was beyond the scope of the warrant and, therefore, warrantless.

That same day, several of the FBI, Dish, and NagraStar Appellees also searched Naicom's Data Center. Present at the time of the search was Quinones, who witnessed the FBI Appellees allow the Dish and NagraStar Appellees to access and search Naicom's computers, servers, and hardware and to take photographs. For his part, Quinones asked for a chance to demonstrate that Naicom was a legitimate business. Finding no evidence of criminal activity, the AUSA and FBI Appellees instructed Quinones and Vega to report to the San Juan FBI offices for an interview. There, Quinones and Vega answered the FBI, Dish, and NagraStar Appellees' questions

and eventually asked to end the interview due to the Dish and NagraStar Appellees' questioning regarding Naicom's technology.

Two days later on August 29, 2019, the FBI, Dish, and NagraStar Appellees took a second bite at the apple and searched (purportedly under the original warrant) Naicom's Data Center once more. As during the first search of Naicom's Data Center, Quinones again observed the Dish and NagraStar Appellees accessing Naicom's computers, servers, and hardware. In Appellants' view, this search was also beyond the scope of the search warrant, because any probable cause had dissipated after not finding any evidence of criminal activity during their search two days prior, and for that reason, the search was warrantless.

Wanting their property returned, Appellants filed a motion to that effect under Federal Rule of Criminal Procedure 41(g), arguing that the searches and seizures violated their Fourth Amendment rights. Without conceding any constitutional violation, the United States government filed a non-opposition response, and the seized property was returned.

Appellants now claim three Bivens causes of action for money damages related to the searches and seizures. In Count One, they say that Appellees conspired with each other to use false evidence and statements in support of the affidavit used to acquire the search warrants -- all in violation of Franks v. Delaware, 438

U.S. 154 (1978).[4] Count Two says that Appellees' search of Suite 207, the site of Vega's Artist Designs & Management Corporation, exceeded the scope of the Naicom Corporation search warrant because Suite 207 belonged to a separate business and was not included in the search warrant, whereas Count Three says that Appellees' second search of Naicom's Data Center exceeded the scope of the Data Center search warrant because it had been searched two days prior.

The district court dismissed Appellants' complaint, concluding that their claims arose within a new context of Bivens, and special factors at issue counseled against extending relief to Appellants' claims (more on this later). This timely appeal followed.

II.

Appellants' appeal hinges upon whether the district court correctly applied Bivens and its progeny to the claims at issue here, which we review de novo. González v. Vélez, 864 F.3d 45, 50 (1st Cir. 2017). Before getting to our assessment, we take a deep dive into the Bivens landscape.

A.

Our Constitution does not expressly provide for money damages for constitutional wrongs. In re Fin. Oversight & Mgmt.

_____

[4] Franks held that the use of false statements, made knowingly and intentionally or with reckless disregard to the truth, that are necessary to the finding of probable cause in a search warrant is a violation of the Fourth Amendment. 438 U.S. at 171-72.

- 7 -

Bd., 41 F.4th 29, 44-45 (1st Cir. 2022). A federal statute enacted by Congress in 1871, nevertheless, does provide for money damages against state actors who violate the Constitution. See 42 U.S.C. § 1983. Congress, however, has never enacted a similar statute against federal actors. Ziglar v. Abbasi, 582 U.S. 120, 130 (2017).

Bivens then entered the scene in 1971. There, "federal agents . . . allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Egbert v. Boule, 142 S. Ct. 1793, 1802 (2022) (citing Bivens, 403 U.S. at 397). The Supreme Court "held that a Fourth Amendment violation by federal agents, acting under color of governmental authority, gave rise to [an implied] cause of action for money damages against those agents in their individual capacities." González, 864 F.3d at 52 (citing Bivens, 403 U.S. at 389).

In this same vein, the Supreme Court expanded Bivens to two more contexts. First up was Davis v. Passman, 442 U.S. 228, 229-31, 248-49 (1979), where the Supreme Court allowed a damages action pursuant to the Fifth Amendment's Equal Protection Clause against a Congressperson for sex discrimination towards a member of their staff. Second was Carlson v. Green, 446 U.S. 14, 16, 20-23 (1980), where the Supreme Court extended Bivens to include an Eighth Amendment violation in which federal prison officials

failed to provide adequate medical treatment for a prisoner's asthma, resulting in his death.

Since these cases were decided, however, the Supreme Court has charted a significantly different path, consistently refusing "to extend the Bivens doctrine to new settings." González, 864 F.3d at 52; see Hernández v. Mesa, 140 S. Ct. 735, 743 (2020) (gathering Supreme Court cases declining to extend Bivens). This hesitance stems from the Supreme Court's recognition that "it is a significant step under separation-of-powers principles for a court to determine that it [as opposed to Congress] has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Abbasi, 582 U.S. at 133. Indeed, in a recent trio of cases, the Supreme Court observed "that expanding the Bivens remedy is now a 'disfavored' judicial activity," id. at 135 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)); that "Bivens, Davis, and Carlson were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated," Hernández, 140 S. Ct. at 741 (quoting Abbasi, 582 U.S. at 132); and that "[i]f there is a rational reason to think that [Congress rather than the courts is who should decide whether to provide a damages remedy] -- as it will be in most every

- 9 -

case, . . . no Bivens action may lie," Egbert, 142 S. Ct. at 1803 (internal citation omitted).

All that said, the Supreme Court has never overruled Bivens and, most recently, clarified how courts should assess such claims. See Egbert, 142 S. Ct. at 1803; see also Abbasi, 582 U.S. at 134 ("[I]t must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of Bivens in the search-and-seizure context in which it arose."). To start, we must ask whether the case presents a new Bivens context, which boils down to whether the case is meaningfully different from Bivens, Davis, and Carlson. Egbert, 142 S. Ct. at 1803. What makes a difference "meaningful" is a bit unclear, but the Supreme Court has given us a few guideposts:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Abbasi, 582 U.S. at 139-40. A meaningful difference can also include a new category of defendants. Egbert, 142 S. Ct. at 1803. While the Supreme Court has instructed that "the new-context inquiry is easily satisfied," it has also cautioned that "[s]ome

- 10 -

differences, of course, will be so trivial that they will not suffice to create a new Bivens context." Abbasi, 582 U.S. at 149; see also Snowden v. Henning, 72 F.4th 237, 243-44 (7th Cir. 2023) ("That a difference must be 'meaningful' suggests that some degree of variation will not preclude a Bivens remedy." (emphasis theirs)). If the case presents no meaningful differences (and thus no new context), the analysis ends there and relief under Bivens is available. See Hicks v. Ferreyra, 64 F.4th 156, 166 (4th Cir. 2023).

If, however, the court decides that the case does present a new Bivens context, its next and final question is whether there are any "special factors" counseling against extending Bivens. Egbert, 142 S. Ct. at 1803. "Special factors" are also not clearly defined, but we know that they include, at least, "alternative remedial structures," such that if Congress has already given a would-be Bivens plaintiff a way to redress the constitutional violation, the Bivens suit cannot proceed. Id. at 1804. At bottom, this question looks to whether "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. at 1803 (quoting Abbasi, 582 U.S. at 136). The absence of any special factors means Bivens relief is available, while the presence of special factors means such relief is unavailable. See Hernández, 140 S. Ct. at 743.

- 11 -

The entire analysis ultimately collapses -- the Supreme Court tells us -- into a single, fundamental inquiry: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert, 142 S. Ct. at 1803. Synthesizing all this together, the modern Bivens analysis involves a factual comparison to the facts of Bivens itself (or Davis, or Carlson, depending on the case), with an emphasis on avoiding any extension of Bivens to meaningfully new factual circumstances. With this backdrop laid out, we turn to our assessment of Appellants' claims.

B.

Starting with the new-context step, there is no dispute that the most similar Supreme Court case between Bivens, Davis, and Carlson to the case here is Bivens itself. Remember, Bivens "authorized a damages action against federal officials for alleged violations of the Fourth Amendment." Id. at 1799. So too here are Appellants attempting to vindicate their Fourth Amendment rights. We know, however, that this similarity, by itself, is insufficient to qualify this case as presenting the same context as in Bivens. Hernández, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). What's worse (at least for Appellants)

- 12 -

is that the similarities between Bivens and this case also end there.

As we mentioned, the relevant analysis involves a factual comparison, and the facts of Bivens cannot be viewed generally. See, e.g., Egbert, 142 S. Ct. at 1805; Mays v. Smith, 70 F.4th 198, 204 (4th Cir. 2023) ("But citation to the constitutional provision alone is insufficiently granular for the new-context inquiry." (citing, e.g., Hernández, 140 S. Ct. at 743)); Tun-Cos v. Perrotte, 922 F.3d 514, 524 (4th Cir. 2019) ("Arguing at so general a level . . . only ignores the language of Abbasi."). To recap, the facts there involved a Fourth Amendment claim against federal line-level investigative officers who allegedly entered and searched the plaintiff's apartment, arrested him for alleged drug violations, manacled him in front of his family, threatened to arrest his family, and later interrogated, booked, and visually strip searched him -- all without probable cause or a warrant and with excessive force. Bivens, 403 U.S. at 389. The facts of this case, on the contrary, involve Fourth Amendment claims against prosecutors, federal line-level investigative officers, and private, corporate employees acting under color of federal law, who are alleged to have jointly fabricated evidence in support of warrants to search a business investigated for copyright and money laundering violations, seized physical evidence (which was returned), and twice exceeded the

scope of those warrants.  As these descriptions demonstrate, the differences are plenty.

The district court noted several differences that it considered meaningful, including that 1) the challenged conduct differed from the challenged conduct in Bivens; 2) a warrant was issued and ran against a business, as opposed to an individual; 3) the harm to Appellants was not a result of Appellees' direct actions, but rather a result of intervening decisions by various actors; 4) Appellants' claims required different proof than what was required in Bivens; and 5) the claims were brought against a new category of defendants, prosecutors.  We need not comment upon whether any of these differences individually would suffice to make this a new context because together, the differences in the challenged conduct -- including the issuance of a warrant, which ran against a business -- and in the defendants -- including the prosecutors and private, corporate employees -- suffice (when viewed collectively) to show that this case differs meaningfully from Bivens and therefore presents a new context.

To explain, take first the law enforcement actions at issue here, which differ entirely from those at issue in Bivens. See, e.g., Abbasi, 582 U.S. at 140 (listing "the generality or specificity of the official action" as a meaningful difference); Xiaoxing Xi v. Haugen, 68 F.4th 824, 834 (3d Cir. 2023) (differentiating from Bivens an appellant's Fourth Amendment

- 14 -

claims because they "concern a different breed of law enforcement

misconduct"); Annappareddy v. Pascale, 996 F.3d 120, 136 (4th Cir.

2021) (differentiating from Bivens an appellant's Fourth Amendment

claims because the "alleged misdeeds here are different from those

in Bivens" (citation and internal quotation marks omitted)); Ahmed

v. Weyker, 984 F.3d 564, 568 (8th Cir. 2020) (differentiating from

Bivens an appellant's Fourth Amendment claims because "the sorts

of actions being challenged here are different" (citation and

internal quotation marks omitted)).  Comparing these two sets of

facts, the federal officers in Bivens handcuffed and arrested the

appellant and, without a warrant, searched his apartment and his

person through a visual strip search.  Bivens, 403 U.S. at 389.

Here, on the other hand, no one was handcuffed or arrested and no

one's home nor their person (naked or otherwise) was searched

without a warrant.[5]  What's more, here there was a warrant, which

---

[5] As we understand it, Appellants argue that Franks violations such as those alleged here are like the law enforcement misconduct in Bivens, because, in Aponte Matos v. Toledo-Dávila, 135 F.3d 182 (1st Cir. 1998), this court supposedly authorized Bivens actions for Franks violations.  Not so.  There, the court analyzed qualified immunity and liability for Franks violations pursuant to § 1983, not Bivens, and stated that "[a]n officer who obtains a warrant through material false statements which result in an unconstitutional search may be held personally liable for his actions under § 1983."  Id. at 187.  This distinction matters because Bivens liability is not as expansive as that under § 1983, so the fact that liability under § 1983 exists does not necessarily mean that Bivens liability also exists.  See Hernández, 140 S. Ct. at 747 (noting that Bivens is the "more limited federal analog to § 1983" (citation and internal quotation marks omitted)).

was issued against a business, not against an individual or the individual's home.[6]  In sum, each of the Appellants' claims targets

All this is not to say that claims involving warrants, allegations of Franks violations, or other alleged misconduct at issue here (such as exceeding the scope of a warrant) necessarily fall outside Bivens' ambit -- issues upon which courts have diverged.  See Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 563-65 (7th Cir. 2022) (comparing circuit cases that have reached opposing conclusions as to Bivens relief in the "context of alleged false and misleading warrant applications," and further suggesting that such conduct could support a Bivens claim within the Seventh Circuit).  For example, the mere fact of a warrant might not present a new context if the defendant's conduct closely paralleled that from Bivens, Davis, or Carlson. We leave those issues for another day because all the differences identified above, when viewed in the aggregate, are sufficient reason to conclude Appellants' three counts are each an extension of Bivens.

[6] Appellants appear to suggest that it is irrelevant that the warrant ran against a business, because businesses are entitled to some Fourth Amendment protections.  Being entitled to Fourth Amendment protections, however, is not enough to access Bivens relief.  See Hernández, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); see also Annappareddy, 996 F.3d at 137 ("There appear to be no cases — in the Supreme Court or any other court — approving a Bivens claim for acts taken against a corporate entity.").  Appellants also argue that other circuit courts have allowed Bivens claims for acts taken against businesses, relying on three cases.  See Schowengerdt v. Gen. Dynamics Corp., 823 F.2d 1328 (9th Cir. 1987); Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir. 1982); Yiamouyiannis v. Chem. Abstracts Serv., 521 F.2d 1392 (6th Cir. 1975).  Those cases hardly stand for such a proposition as the plaintiffs in each of them were individuals, not businesses.

But, just as we mentioned above in relation to warrants, nothing in this opinion should be construed as necessarily foreclosing Bivens actions involving businesses.  Here, however, the aforementioned differences, collectively, distinguish this case meaningfully from Bivens.

"a different part of police work than the apprehension, detention, and physical searches at issue in Bivens." Farah v. Weyker, 926 F.3d 492, 499 (8th Cir. 2019).

Take second the defendants in this case, who are not just federal line-level investigative officers (as was the case in Bivens) but also include federal prosecutors and private, corporate employees allegedly working with the government. Egbert, 142 S. Ct. at 1803 (identifying as an "example[] of [a] new context[] . . . a case that involves a new category of defendants" (citation and internal quotation marks omitted)). Neither Bivens, Davis, nor Carlson involved claims against prosecutors, and several courts, including one of our sister circuits, have determined that prosecutors are a new category of defendants. See, e.g., Annappareddy, 996 F.3d at 134; Jones v. District of Columbia, No. 21-cv-03117, 2022 WL 2904171, at *5 (D.D.C. July 22, 2022); Greenlaw v. Klimek, No. 4:20-CV-311, 2021 WL 6112784, at *6 (E.D. Tex. Dec. 27, 2021); Martin v. Gray, No. 20-CV-741, 2021 WL 3855566, at *4 (E.D. Wis. Aug. 27, 2021); Hornoff v. Waller, No. 2:19-cv-00198, 2020 U.S. Dist. LEXIS 198578, at *56 (D. Me. Oct. 20, 2020). This conclusion makes good sense, as the Supreme Court's "watchword" in Bivens' cases "is caution[,]" due to the separation-of-powers issues at play. Hernández, 140 S. Ct. at 742. The inclusion of prosecutors "risk[s] . . . intrusion

on executive-branch authority to enforce the law and prosecute crimes." Farah, 926 F.3d at 501.[7]

Similarly, neither Bivens, Davis, nor Carlson involved claims against private, corporate employees. Appellants suggest that this court has previously greenlit Bivens claims against private parties, and the district court expressed confusion over this court's caselaw on the topic. Compare Stoutt v. Banco Popular de P.R., 320 F.3d 26, 33 (1st Cir. 2003) ("The Supreme Court has already limited Bivens actions by refusing to extend them to private entities acting under color of federal law." (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61 (2001))); Fletcher v. R.I. Hosp. Trust Nat'l Bank, 496 F.2d 927, 932 n.8 (1st Cir. 1974) ("[T]here is no cause of action against private parties acting under color of federal law or custom."), with Gerena v. P.R. Legal Servs., Inc., 697 F.2d 447, 448-52 (1st Cir. 1983) (assuming that

---

[7] Appellants resist this conclusion. They first seem to suggest that the prosecutors here acted more akin to investigators, as opposed to prosecutors. This argument, however, is undermined by their own allegations, which state that the prosecutors reviewed evidence gathered by other individuals and decided to apply for a search warrant. See Greenlaw, 2021 WL 6112784, at *6 ("Defendant Bunch is a prosecutor, not an on-the-scene, investigative officer. His role as a federal officer—which includes reviewing evidence, deciding whether to seek a search warrant, and pursuing criminal charges—meaningfully differs from the narcotics agents in Bivens[.]"). They also point to our decision in Aponte Matos again because we supposedly concluded that a prosecutor can be held liable under Bivens for a Franks violation. That's not correct. None of the claims in Aponte Matos were raised against a prosecutor. 135 F.3d at 186.

- 18 -

a private corporation can be a governmental actor and, therefore, liable for damages under Bivens).  Whatever confusion there was, the Supreme Court dispelled it, see Minneci v. Pollard, 565 U.S. 118, 126 (2012) ("Carlson, however, was a case in which a federal prisoner sought damages from personnel employed by the *government*, not personnel employed by a *private* firm.  . . .  And for present purposes that fact -- of employment status -- makes a critical difference." (emphasis theirs) (internal citation omitted)), meaning that the inclusion here of private, corporate employees as defendants contributes to this context being new.

It is of no moment that -- as Appellants point out -- this case also involved the specific acts of line-level agents in the course of enforcing ordinary criminal laws and that there is some judicial guidance on the alleged Fourth Amendment violations at play here.[8]   See Abbasi, 582 U.S. at 140 (explaining that meaningful differences include "the rank of the officers involved; the constitutional right at issue; . . . the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [and] the statutory or other legal mandate under which the officer was operating").  That is so because "even a modest extension is still an extension," id. at

---

[8] To be sure, the Supreme Court has previously concluded that, even where the officer involved is a line-level agent, other differences can render the factual scenario "new."  See Egbert, 142 S. Ct. at 1804-07.

147, and the differences in the challenged conduct, combined with the inclusion of multiple new categories of defendants, are sufficient to render this context new.

C.

As we find that Appellants' claims arise in a new Bivens context, we proceed to step two, where we consider whether "special factors counsel[] hesitation" in extending Bivens. Id. at 136 (quoting Carlson, 446 U.S. at 18) (internal quotation marks omitted). "[E]ven a single reason to pause before applying Bivens in a new context" is sufficient to preclude relief, because "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." Egbert, 142 S. Ct. at 1800, 1803 (citation and internal quotation marks omitted). Here, the existence of an alternative remedy -- namely, Rule 41(g) of the Federal Rules of Criminal Procedure -- gives us sufficient reason to take a beat.

Appellants' claims involve allegations of unlawful searches of their businesses and seizure of relevant property. And Rule 41(g) allows "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return," thereby addressing the principal sort of injuries of which Appellants complain. Fed. R. Crim. P. 41(g). Indeed, Appellants pursued and were awarded this relief before initiating the instant lawsuit.

- 20 -

Rule 41(g) provides cold comfort -- Appellants (understandably) tell us -- because it does not provide for damages.[9] In their view, any alternative remedy need not be "perfectly congruent" with Bivens, but it must be, at minimum, "adequate" and "roughly similar." This argument falls flat because it has been squarely rejected by our judicial superiors. The Supreme Court has recently made plain that "existing remedies [need] not provide complete relief," Egbert, 142 S. Ct. at 1804 (citation and internal quotation marks omitted); see also González, 864 F.3d at 54-55 ("The fact that other or different relief might be available . . . if constitutional tort suits were permitted" is not a "basis for extending" Bivens claims.), and that remedies such as injunctions and writs of habeas corpus, which likewise do not provide for damages, are sufficient to foreclose Bivens relief and qualify as alternative remedies, Abbasi, 582 U.S. at 144-45.

Notably, when assessing an alternative remedy, the Supreme Court has clarified that "the court must ask only whether it, rather than the political branches, is better equipped to

---

[9] Relatedly, Appellants also appear to argue that Appellees cannot now contend that the searches comported with the Fourth Amendment, because the United States did not argue so in the Rule 41(g) proceedings. Accordingly, in Appellants' view, Appellees have waived any such argument. Ultimately, that argument is neither here nor there, because the focus of this appeal is not whether Appellees' actions were constitutional, but whether Appellants have an implied cause of action to bring the claim.

decide whether existing remedies should be augmented by the creation of a new judicial remedy." Egbert, 142 S. Ct. at 1804 (citation and internal quotation marks omitted). There is reason here to think Congress is so equipped. The Federal Rules of Criminal Procedure, including Rule 41(g), are "prescribed by the Supreme Court pursuant to the authority conferred upon the [C]ourt by Congress" through the Rules Enabling Act, Miranda v. United States, 255 F.2d 9, 15 (1st Cir. 1958), thus rendering the rules "as binding as any statute duly enacted by Congress," Bank of N.S. v. United States, 487 U.S. 250, 255 (1988). Congress itself has repeatedly amended Rule 41, see Pub. L. No. 107-56 § 219, 115 Stat. 272, 291 (2001); Pub. L. No. 95-78 § 2(e), 91 Stat. 319, 319-20 (1977), and has never amended it to provide for damages.[10] Such "silence is notable," because "when Congress fails to provide a damages remedy . . . it is much more difficult to believe that congressional inaction was inadvertent." Abbasi, 582 U.S. at 144 (citation and internal quotation marks omitted).

---

[10] The 2001 amendment involved the insertion of subsection (b)(3). Pub. L. No. 107-56 § 219, 115 Stat. 272, 291 (2001). When an officer applies for a warrant in an investigation of terrorism, subsection (b)(3) requires a connection between the judge's district and the terrorism activities. Fed. R. Crim. P. 41(b)(3). The 1977 amendment involved changes to the requirements regarding the issuance of warrants based upon an affidavit and those based upon oral testimony. Pub. L. No. 95-78 § 2(e), 91 Stat. 319, 319-20 (1977).

The upshot of all this is that Rule 41(g) functions as an alternative remedy for Appellants and, consequently, a special factor counseling against an extension of Bivens -- a conclusion reached by many other courts. See, e.g., Davis v. Wernick, No. 19-cv-3327, 2021 WL 310999, at *4 (D.D.C. Jan. 29, 2021) (concluding a motion to return property is an alternative remedy, foreclosing Bivens relief); Childress v. Palmer, No. 3:18-cv-00514, 2018 WL 4282601, at *3 (S.D. Cal. Sept. 7, 2018) (same); Omran v. United States, No. 1:14-CV-13881, 2016 WL 4158556, at *11 (D. Mass. June 22, 2016) (same); Baird v. Holton, 806 F. Supp. 2d 53, 57–58 (D.D.C. 2011) (same); Leyland v. Edwards, 797 F. Supp. 2d 7, 10-11 (D.D.C. 2011) (same); cf. Perez-Colon v. Camacho, 206 F. App'x 1, 2 (1st Cir. 2006) ("Because appellant has a cause of action under Rule 41(g), he has no need to base his claim for the return of [money seized] on either the [Federal Tort Claims Act ("FTCA")] or Bivens.").[11]

III.

To round out our analysis is our conclusion:  Having determined that Appellants' claims arise in a new factual scenario

---

[11] Because the existence of even one special factor is sufficient to preclude Bivens relief, we do not reach Appellants' arguments as to the other special factors identified by the district court, including separation-of-powers concerns and alternative relief under the FTCA.  We also do not reach the Dish and NagraStar Appellees' argument, offered for the first time at oral argument, that Appellants' separate civil suit against them for RICO and other violations is an alternative remedy.

and involve special factors, we affirm the district court's dismissal of Appellants' <u>Bivens</u> claims.[12]

---

[12] Before we go, we have a few loose threads to tie up. First, Appellants criticize the district court for, allegedly, failing to analyze Count II and Count III in its decision. We do not believe the district court so erred but, to the extent it did, our analysis is de novo and addresses all three counts. Second, as we conclude that Appellants' <u>Bivens</u> claims cannot move forward, we do not address Appellants' arguments as to absolute and qualified immunity. Third, we understand Appellants' final argument to be that, even if their claims cannot proceed under <u>Bivens</u>, the statute allowing for federal question jurisdiction, 28 U.S.C. § 1331, gives them a presumptive right of action in federal court to bring their claims. We are not persuaded. That statute gives courts the power to hear cases; it does not give plaintiffs the power to maintain any cause of action they want. If Congress intended 28 U.S.C. § 1331 to grant plaintiffs a cause of action against federal actors for constitutional violations, it knew how to do so because it enacted such a statute against state actors. <u>See generally</u> 42 U.S.C. § 1983.